Filed 7/7/26  Wong v. Santa Monica-Malibu Unified School Dist. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| CHARLES WONG et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SANTA MONICA-MALIBU UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants and Appellants. | B327589 <br><br> (Los Angeles County Super. Ct. No. 19STCV05418) |

APPEAL from orders of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Qureshi Law, Omar G. Qureshi, Max A. Schoening; Vanaman German, David W. German; Esner, Chang, Boyer & Murphy, Holly N. Boyer and Kiran R. Iyer for Plaintiffs and Appellants.

Jinny Kim and Francesca Simon for Disability Rights Education and Defense Fund as Amicus Curiae on behalf of Plaintiffs and Appellants.

Atkinson, Andelson, Loya, Ruud & Romo, Marlon C. Wadlington, Scott D. Danforth, Kristin M. Myers; Greines, Martin, Stein & Richland, Edward L. Xanders and Stefan C. Love for Defendants and Appellants.

————————————————

A jury awarded severely autistic twin brothers C.R, and C.N. (together, Plaintiffs) a total of $45 million in damages in their litigation against the Santa Monica-Malibu Unified School District (the District) and Galit Gottlieb (together, Defendants). On appeal, Defendants contend the court should have granted their motion for partial judgment notwithstanding the verdict (JNOV) and erred when it awarded attorney fees to Plaintiffs after vacating the judgment; they also request this court make rulings concerning the evidence that may be presented at the coming retrial on damages. Plaintiffs cross-appeal, arguing the trial court erred when it ordered a new trial on damages. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, born in 2010, are autistic, have severe intellectual disabilities, and are nonverbal. For several years they attended the District's Life Skills Program for students with special needs.

Gottlieb was an aide who worked with special needs students in the Life Skills Program and on the school bus. For a portion of the 2017-2018 school year, Gottlieb accompanied the twins on the school bus to and from school and worked with them in the Life Skills classroom.

In 2019, through their parents as guardians ad litem, Plaintiffs sued Gottlieb, the District, and a number of District employees. At the jury trial, Plaintiffs presented evidence that Gottlieb began physically abusing the twins in approximately September 2017. On the bus, she elbowed them hard if they attempted to get up and move, restrained them by squeezing their wrists so hard their fingers turned red, forcefully pulled or twisted C.R.'s arm when he resisted leaving the bus, forced their shoes back on their feet when they took them off, and restrained C.R. unnecessarily. In the classroom she used alcohol-based hand sanitizer on their dry, cracked hands as punishment and threatened them with it to ensure their compliance.

Plaintiffs also presented evidence that although numerous District employees witnessed Gottlieb's conduct, the only reports they made were within the District. Despite mandated reporting laws (Pen. Code, § 11166, subd. (a)), no District employee made a report of suspected child abuse or neglect to Child Protective Services until January 31, 2018, when a teacher contacted Child Protective Services out of concern that nothing was being done to address the issue. Gottlieb was then placed on leave.

Plaintiffs presented evidence that the twins' aggression escalated during and after their exposure to Gottlieb, to the point that they had to be sent to a more specialized school. The twins were diagnosed with post-traumatic stress disorder (PTSD) caused by the abuse. An expert opined that had the boys not been abused, they could have lived at home until they were in their 30's, but that because of their PTSD, they would have to be institutionalized in their teens because their behaviors would become too difficult to manage.

Plaintiffs' expert witness recommended the twins receive specialized education, a dedicated nurse care manager, and long-term residential care in a facility providing specialized 24-hour supervision. Their life care planner testified these services would cost between approximately $18.8 million and $44.2 million for C.R. and approximately $17.3 million and $41 million for C.N. The total present value of each child's future care needs under Plaintiffs' recommended care plan was between approximately $13 million and $19 million for C.R. and between approximately $12 million and $17 million for C.N.

In closing argument, Plaintiffs' counsel urged the jury to award each child damages against the District in the amount of $60 million, for a total of $120 million. Defendants maintained there was no evidence C.N. was abused, and if C.R. was abused, it did not cause PTSD. They argued neither child had PTSD, and even if they did, the solution was a medication adjustment and therapy at a cost of $8,000 to $16,000. Defendants contended that if the jury found C.R. had been abused, he should be awarded $216,000: $16,000 for therapy, and $200,000 to put in a fund for whatever services he needed. By virtue of their conditions, the twins were going to have a difficult life, defense counsel argued, and while that was not fair, neither would it be fair to make the District pay $120 million for behaviors the children had displayed from a young age and would have all their lives.

The jury instructions directed jurors to determine the liability of each defendant separately. The verdict form asked the jury to determine the liability of each defendant to each child and to assess the amount of damages Gottlieb caused each child separately from the amount of damages the District caused that

4

child.  The jury was not asked to decide each child's total damages and then allocate responsibility between the defendants.

The jury found Gottlieb had committed battery on both children and violated the Ralph Civil Rights Act of 1976 (Ralph Act) (Civ. Code, § 51.7) by committing violence against them on account of their disability.  The jury found Gottlieb had caused C.R. a future economic loss of $1 million, a past noneconomic loss of $1 million, and a future noneconomic loss of $1 million, for a total amount of damages caused by Gottlieb to C.R. of $3 million.  As to C.N., the jury found Gottlieb had caused him a future economic loss of $1 million, past noneconomic loss of $500,000, and a future noneconomic loss of $500,000, for a total amount of damages caused by Gottlieb to C.N. of $2 million.  The total amount of damages the jury found Gottlieb had caused the children was $5 million.

The jury found employees of the District had negligently supervised and retained Gottlieb and committed negligence per se by failing to make a timely report of suspected child abuse or neglect regarding Gottlieb.  The jury found the District had caused C.R. future economic loss in the amount of $15 million, past noneconomic loss in the amount of $5 million, and future noneconomic loss in the amount of $5 million, for a total award of $25 million in damages caused to C.R. by the District.  The jury found the District had caused C.N. future economic loss in the amount of $10 million, past noneconomic loss in the amount of $2.5 million, and future noneconomic loss in the amount of $2.5 million, for a total of $15 million in damages caused to C.N. by the District.  In total, the jury found the District had caused the children $40 million in damages.

5

Both Plaintiffs and Defendants filed post-trial motions. Defendants moved for JNOV and for a new trial, while Plaintiffs requested an award of attorney fees against Gottlieb for violations of the Ralph Act. The trial court denied the motion for JNOV and the motion for a new trial as to liability, but conditionally granted a new trial on the issue of damages if Plaintiffs did not accept a remittitur lowering the damages for each child to the amount of damages the jury had concluded Gottlieb caused him: $3 million for C.R. and $2 million for C.N. Plaintiffs rejected the remittitur, triggering a new trial on damages.

The trial court determined that "to date," Plaintiffs were entitled to legal fees against Gottlieb based on the liability verdict against her under the Ralph Act "and upon the assumption that plaintiffs will obtain a damages verdict against Gottlieb under the Ralph Act in the future retrial on damages," but stated that no judgment would be entered against her unless and until Plaintiffs secured a damages judgment against her under the Ralph Act.

Both Plaintiffs and Defendants appeal.

## DISCUSSION

### I. Defendants' Appeal

#### A. Denial of Partial JNOV on Ralph Act Claim

The Ralph Act provides, "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property . . . on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . or because another person perceives them to have one or more of those

6

characteristics." (Civ. Code, § 51.7, subd. (b)(1).) The protected characteristics for the purpose of this statute include disability. (Civ. Code, § 51, subds. (b), (e).) After the jury found Gottlieb had violated the Ralph Act as to both twins, Defendants moved for JNOV, contending, inter alia, that there was no substantial evidence that Gottlieb's conduct was motivated by their disability.

" ' "The trial court's discretion in granting a motion for [JNOV] is severely limited." [Citation.] " 'The trial judge's power to grant a [JNOV] is identical to [their] power to grant a directed verdict [citations]. The trial judge cannot reweigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for [JNOV] should be denied. [Citations.] "A motion for [JNOV] of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." ' " ' " (*Epochal Enterprises, Inc. v. LF Encinitas Properties, LLC* (2024) 99 Cal.App.5th 44, 54 (*Epochal*).)

The trial court denied the motion for JNOV, stating, "Defendants argue that the Ralph Act [claim] was not proved by sufficient evidence because its violation requires evidence that the perpetrator committed or threatened prohibited conduct because of the plaintiff's disability. [¶] [C.R. and C.N.] are disabled, and there is evidence that Gottlieb's conduct was motivated by their disabilities. The twins because they suffered from autism misbehaved and were every day aggressive toward

7

nearby persons. This was so even with full time supervision. Plaintiffs argued to the jury that Gottlieb mistreated (or threatened) the twins to coerce their compliance with her instructions. Furthermore, as the twins cannot verbally communicate due to their autism, plaintiffs argued Gottlieb threatened them to obtain their compliance because she knew they could not complain to or call for help from others. Gottlieb was able to abuse the twins because they were disabled and she did so to make her job easier. The evidence supports a conclusion that Gottlieb assaulted or threatened to assault the twins because of their disabilities. [¶] The parties' briefs argue that various appellate decisions support their contrary positions. Plaintiffs have the better of that argument. There is no need, however, for the Court to debate the case law because, in its view, Gottlieb's conduct demonstrates her assaultive conduct occurred as discrimination against plaintiffs because of their disabilities. Gottlieb[] was assigned to protect the twins from harm that might be caused to them because of their disabilities; and she used their inability to complain about her threats to them to exercise control over them."

On review of a court's ruling on a motion for JNOV, we determine " ' "whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." ' [Citation.] Under this 'highly deferential' standard of review, we must 'accept all evidence supporting the trial court's order[,] . . . draw all reasonable inferences to affirm the trial court,' and '[w]e do not reweigh the evidence.' " (*Contreras v. Green Thumb Produce, Inc.* (2025) 116 Cal.App.5th 1251, 1259.) If an appeal challenging the denial of the motion for JNOV "raises purely legal questions,

however, our review is de novo." (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)

The thrust of Defendants' appeal is the meaning of the phrase, "committed . . . on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b)(1).) Defendants contend, based on two sentences in *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860 (*Austin B.*), that for liability under the Ralph Act, the defendant must have committed the prohibited conduct because they were biased against or had an animus against persons with a protected characteristic. The plaintiffs strenuously disagree with this interpretation of the Ralph Act, as does the amicus curiae.

The facts in *Austin B.* bear considerable resemblance to those here, as both cases involve Ralph Act claims involving young, nonverbal, severely autistic children alleged to have been abused by a school employee. (*Austin B.*, *supra*, 149 Cal.App.4th at pp. 865–868.) In *Austin B.*, the trial court granted a nonsuit on the Ralph Act claim because the evidence presented established that only the conduct alleged was to intimidate and coerce the children, it was directed at children of the requisite age, and it was directed at disabled individuals. (*Id.* at pp. 880–881.) The Court of Appeal affirmed because there was "no evidence creating even an inference that [the educator's] *motivation* in allegedly abusing [the children] was the fact that they were disabled children." (*Id.* at p. 881.) The court continued, "In other words, there was no evidence that he took the alleged actions because he was biased against or had an animus against disabled children." (*Ibid.*)

9

Defendants seize upon this second sentence to interpret the Ralph Act as imposing a requirement that defendants "acted *out of a discriminatory animus* towards disabled children," and they argue JNOV should have been granted on the Ralph Act claim because there was no evidence that Gottlieb had a discriminatory animus. We decline to inflate this single explanatory sentence into a requirement of proof in excess of the requirements of the underlying statute. Nowhere in the Ralph Act does it state that a defendant has to have a discriminatory animus toward an entire group of people with a protected characteristic in order for their conduct to violate the Ralph Act. The statute states only that the abusive conduct must be "committed . . . on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . or because another person perceives them to have one or more of those characteristics." (Civ. Code, § 51.7, subd. (b)(1).) As the CACI standard jury instruction listing the elements of a Ralph Act claim explains, "a substantial motivating reason for" the defendant's conduct must be their perception of the plaintiff's protected characteristic. (CACI No. 3063.)[1]

---

[1] Defendants claim *Gabrielle A. v. County of Orange* (2017) 10 Cal.App.5th 1268 supports their argument that plaintiffs had to prove " 'a motivating reason' for Gottlieb's actions was animus towards the twins' disability status." We find no support for this assertion in *Gabrielle A.*, where the court found summary judgment appropriate on a Ralph Act claim and stated, "Under the Ralph Act, a plaintiff must establish the defendant threatened or committed violent acts against the plaintiff or their property, and a motivating reason for doing so was a prohibited discriminatory motive, or that the defendant aided, incited, or conspired in the denial of a protected right. [Citations.] Again, plaintiffs allege[d] no violent act, arguing defendants 'conspired' against them due to their 'medical conditions.' Once again, they

Here, where the protected characteristic is disability, what is required for a violation of the Ralph Act is that the defendant commit the prohibited conduct on account of the victim's disability or because they perceive the victim to be disabled. (Civ. Code, § 51.7, subd. (b)(1).) A defendant need not be biased against all disabled children for their conduct against specific disabled children to violate the Ralph Act. Therefore, while we agree with the holding in *Austin B.* that nonsuit is appropriate where there is no evidence that the defendant's motivation in allegedly abusing the disabled children "was the fact that they were disabled children" (*Austin B.*, *supra*, 149 Cal.App.4th at p. 881), we disagree with *Austin B.* to any extent it is read to require that in addition to committing prohibited acts "on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, . . . or because another person perceives them to have one or more of those characteristics" (Civ. Code, § 51.7, subd. (b)(1)), a plaintiff must prove the defendant was biased against or held a discriminatory animus toward the entire category of people with that protected characteristic. (See *Austin B.*, at p. 881.) We accordingly reject Defendants' argument that liability under the Ralph Act "requires that the '*motivation*' for [Gottlieb's] conduct was 'bias[]' or 'animus against disabled children.' "

---

offer no evidence to establish defendants discriminated against them, but claim 'quite possibly' this animus should be inferred." (*Id.* at p. 1291.) From context it appears clear the "animus" the *Gabrielle A.* plaintiffs urged be inferred in the second sentence refers to the prohibited discriminatory motive mentioned in the first sentence, not a statement that a defendant must be motivated by animus toward a protected characteristic status as Defendants claim.

11

Defendants fault Plaintiffs for failing to elicit testimony or proffer evidence of this animus or bias on Gottlieb's part as a motive for her conduct and assert that the twins' non-compliant, disruptive behavior was the "only motivating reason for Gottlieb's conduct." They also argue the fact that Gottlieb was able to abuse the twins because of their disability—they were nonverbal and unable to seek help or report Gottlieb's conduct—simply "posits disability as an explanation only of how Gottlieb 'got away with it,' not of *why* she did it." We disagree that the only inference that may be drawn from Gottlieb's conduct is that the twins' disability explains how she "got away with" abusing them. A reasonable fact finder could also infer from that conduct why Gottlieb did what she did. Although Gottlieb was supposed to protect the children from harm that might come to them due to their disability, she instead capitalized on that disability and abused them, secure in the knowledge they could not complain or call for help from others. This supports an inference that Gottlieb did what she did because of the twins' disability; she felt free to threaten and inflict pain upon them *because they were disabled*. That is, she engaged in "violence, or intimidation by threat of violence . . . on account of" the twins' disability, or "because [she] perceive[d] them to have" a disability. (Civ. Code, § 51.7, subd. (b)(1).) Drawing all reasonable inferences from the evidence in favor of the jury's verdicts, as we must, substantial evidence supported the verdicts. (*Epochal, supra,* 99 Cal.App.5th at p. 54.) The trial court did not err in denying the motion for JNOV.

B. Requested Direction to Trial Court

Defendants request that we direct the trial court, when it conducts the new trial it ordered, to exclude evidence and

12

argument on several theories of injury and to exclude evidence other than evidence pertaining to Gottlieb's conduct toward the twins. Defendants claim Code of Civil Procedure[2] section 43 requires this court to make the evidentiary rulings it requests. Section 43 provides, "The Supreme Court, and the courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case." As the new trial was ordered by the trial court, not by this court, the statutory language upon which Defendants rely is not applicable here.

Defendants also argue this court has an "obligation," independent of section 43, to determine all questions legitimately submitted by an appeal so the same errors will not lead to a second appeal. Most of the cases listed by Defendants as evidencing this "flexible power" are actually decisions in which the appellate court invoked section 43 and gave directions in the course of ordering a new trial or further proceedings. None of the cited decisions tends to establish this court has the authority to direct in advance what evidence the trial court should admit at the new trial it, not we, ordered. As evidentiary issues concerning the upcoming trial should be raised in the first instance in the trial court, we decline the Defendants' invitation to direct the trial court how to conduct the new trial it ordered.

---

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

C.    Attorney Fees

After judgment was entered in favor of Plaintiffs, Plaintiffs filed a request for attorney fees as the prevailing party on their Ralph Act claim.  In opposition to the request, Defendants agreed Plaintiffs were entitled to attorney fees under the Ralph Act but argued the requested award should be reduced.  The hearing on the attorney fee motion was held after Plaintiffs rejected the conditional remittitur, necessitating a new trial on damages.  At the hearing, Defendants again argued only about the size of the attorney fee award.

In its written ruling on Plaintiffs' attorney fee motion, the court calculated attorney fees due to Plaintiffs on the Ralph Act claim, but its ruling appeared to be in many respects preliminary. The court indicated it lacked time to make certain relevant calculations; explained its award of attorney fees was based on "the assumption that plaintiffs will obtain a damages verdict against Gottlieb under the Ralph Act in the future retrial on damages;" stated a judgment against Gottlieb would not be entered until and unless Plaintiffs obtained a damages judgment against her; selected a 1.15 multiplier but stated it might "be asked to revisit" that if Plaintiffs succeeded at the new damages trial in obtaining a judgment against Gottlieb; did not order Defendants to make any present payments, noting Plaintiffs would "not receive the payment of any fees until the case is successfully concluded and a judgment entered"; and indicated the attorney fees it calculated were "to date."

Defendants appeal the attorney fee ruling and argue it is appealable as an order made after an appealable judgment. (§ 904.1, subd. (a)(2).)  However, to any extent that the court's ruling on the motion for attorney fees can be considered an order

14

despite its preliminary nature, the order is not appealable because it was made after the court granted a new trial on damages, thereby vacating the judgment. " 'Under section 904.1(a)(2), *postjudgment* orders granting or denying motions for attorney fees are deemed to be appealable.' [Citation.] The trial court's order denying [the] motions for attorney fees in this case is not a *postjudgment* order because the trial court's order granting [the] motion for new trial vacated the judgment. Thus, the trial court's attorney fee order is not appealable." (*Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 305, fn. omitted; see also *Nimmagadda v. Krishnamurthy* (1992) 3 Cal.App.4th 1505, 1507–1508 [order awarding attorney fees was not an appealable postjudgment order because trial court granted new trial on damages].)

Finally, even if the order were appealable, by agreeing in the trial court that Plaintiffs were entitled to attorney fees under the Ralph Act and raising no claim that an attorney fee ruling was premature or unauthorized, Defendants forfeited this issue. A party may not assert on appeal a new theory against recovery of attorney fees. (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.) "It is well established that appellate courts will ordinarily not consider errors that 'could have been, but [were] not raised below.' [Citations.] The rule applies to defenses as well as theories of liability, and to a 'new theory for or against recovery' of attorney fees. [Citations.] 'The policy behind the rule is fairness.' [Citation.] 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any

15

issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' " (*Ibid*.; see also *Planned Protective Services, Inc. v. Gorton* (1988) 200 Cal.App.3d 1, 12–13 [party who did not discuss a statute in trial court briefing or argument on a motion to tax costs invited error and may not raise statute's applicability on appeal], disapproved on other grounds in *Martin v. Szeto* (2004) 32 Cal.4th 445, 451, fn. 7.) Defendants assert we should consider their new theory on appeal because it is a pure question of law applied to undisputed facts, but they offer no reason we should exercise this discretion. "Merely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion." (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275–1276, fn. 3.)

## II. **Plaintiffs' Cross-Appeal of Order Granting Partial New Trial**

Plaintiffs appeal the portion of the new trial order ordering a new trial on damages.

### A. Trial Court Ruling

The trial court began with the premise that the harm the twins suffered was the abuse by Gottlieb. The court believed the District's liability was vicarious—it arose from Gottlieb's conduct—but it observed that even if the District's liability for failing to report suspected child abuse was considered direct

16

rather than vicarious, the harm caused by the District was that Gottlieb's abuse was allowed to continue.

The trial court was troubled by the massive disparity between the damages the jury determined Gottlieb personally caused and the damages the jury found the District caused because the harm the District caused to the children was the harm Gottlieb inflicted. In particular, the court focused on the awards for future economic loss, representing the fact that due to setbacks caused by Gottlieb's abuse the children would have to be institutionalized. The court ruled, "The jury's determination that the economic cost of such future treatment should be charged against Gottlieb at $1 million per twin but against the School District at $15 million (for [C.R.]) or $10 million (for [C.N.]) is inconsistent and without explanation in the evidence. The differential arguably invokes three of the grounds specified in . . . section 657 for a new trial, namely, under section 657(5) as excessive damages; under section 657(6) as evidence insufficient to justify the verdict; and under section 657(6) as a verdict contrary to the law."

The trial court stated, "Because the School District is legally responsible for the harm caused by its employee Gottlieb, the economic damages assessed against each should be the same amount. That the economic damages assessed against the School District are ten times (in [C.N.'s] verdict) and fifteen times (in [C.R.'s] verdict) greater than assessed against Gottlieb are excessive as to the District; and inconsistent." The differential damages award suggested the jury believed the District was more able to pay damages than Gottlieb, which the court found unjustified because the District's liability was vicarious.

Accordingly, the court invoked its authority under section 662.5, subdivision (a)(2) to issue a conditional order granting a new trial on damages unless the party in whose favor the verdict was rendered consents to the reduction of the damages award to the amount the court determines to be fair and reasonable. The court determined it would order a new trial on damages as to both children and both defendants unless Plaintiffs accepted a judgment of $3 million against the District for C.R. and a judgment of $2 million against the District for C.N., the same amount the jury had awarded to each twin for Gottlieb's conduct. The court found these amounts to be fair and reasonable, and explained its action would "equalize the economic damages assessed against each defendant for the harm caused to the plaintiffs." Plaintiffs declined to accept the conditional remittitur specifying these judgment amounts, prompting a new trial on the issue of damages.

### B. Applicable Law

The trial court may order a new trial on all or some of the issues upon motion of the aggrieved party and a showing that the ground for the motion materially affected their rights. (§ 657.) The right to a new trial is purely statutory, and a motion for a new trial can be granted only on one of the grounds enumerated in the statute. (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 501.)

Two of those statutory grounds, "[e]xcessive or inadequate damages" and "[i]nsufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law" (§ 657(1), (6)) are at issue here. A trial court may only grant a new trial on these grounds if "after weighing the evidence the court is convinced from the entire record, including reasonable

18

inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (§ 657.) Moreover, an order granting a new trial on one of these two grounds "shall not be affirmed upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, unless such ground is stated in the order granting the motion[,] and . . . on appeal from an order granting a new trial upon the ground of the insufficiency of the evidence to justify the verdict or other decision, or upon the ground of excessive or inadequate damages, it shall be conclusively presumed that said order as to such ground was made only for the reasons specified in said order or said specification of reasons, and such order shall be reversed as to such ground only if there is no substantial basis in the record for any of such reasons." (*Ibid*.)

When granting a new trial in whole or in part, the trial court must "specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." (§ 657.) "When the trial court provides a statement of reasons as required by section 657, the appropriate standard of judicial review is one that defers to the trial court's resolution of conflicts in the evidence and inquires only whether the court's decision was an abuse of discretion." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 636.) " 'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a

reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside.' " (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 781 (*Christie*).)

C.   Analysis

The trial court did not abuse its discretion by granting a new trial on the issue of damages. The parties agree that the children suffered only one harm, the abuse at Gottlieb's hands. As Plaintiffs wrote in their appellate brief, "Gottlieb directly inflicted, and the District's other employees negligently permitted, the same unitary injuries." The jury was instructed to determine the liability of each defendant separately, and consistent with this instruction, the jury verdict form instructed the jury to make separate findings of liability and damages for each defendant; that is, the jury was tasked with making findings of the amount of damages caused to the children by Gottlieb independently from the amount of damages the District caused them. The jury was not asked to make a total damages award for each child and then allocate responsibility between the defendants.[3]

---

[3]   Directing this court to a proposed verdict form they filed on October 3, 2022, Plaintiffs state they had proposed verdict forms that asked for a total award of damages and then an allocation of fault to each defendant, but the trial court rejected their "proposed verdict forms in favor of the forms proposed by Defendants." Our review has revealed several problems with this claim. First, the verdict forms to which Plaintiffs direct our attention, while proposed by Defendants and listing separate findings of damages, differ substantially from the verdict forms actually used at trial, so it does not appear the court rejected Plaintiffs' forms "in favor of" the defense forms to which they

The jury, therefore, expressly calculated the amount of "damages caused by Galit Gottlieb" to each child: $1 million per child in future economic damages; $1 million for C.N. in noneconomic damages; and $2 million for C.R. in noneconomic damages. In total, the jury found Gottlieb caused C.N. $2 million in damages and C.R. $3 million in damages. However, the jury found the District caused each child vastly more damage *for the same harm, the abuse by Gottlieb*: $15 million in damages for C.N. and $25 million for C.R. The jury, therefore, found the actor whose negligence allowed the harm to occur somehow caused many times more damages than the intentionally tortious actor who actually, deliberately, inflicted the harm itself.

This trial court found the "disparity in damages based on [the] same harm" problematic because it found no basis for valuing this harm at one amount for the direct perpetrator but at a significantly greater amount to the party vicariously responsible for that harm. Plaintiffs describe the court's analysis as an "incorrect legal interpretation" of the verdicts, but from our reading of the court's order it appears to be a factual determination that valuing the damage imposed by Gottlieb at

---

have directed us. Second, Plaintiffs do not cite to any location in the record where the court rejected their proposed verdict form as they assert, or where the court adopted a verdict form proposed by Defendants. Third, the verdict form used at trial appears to have been proposed by Plaintiffs. Finally, when the special verdict form was being finalized, Plaintiffs advised the trial court that other than an objection not relevant here, they had no objections to the special verdict form. While it appears one additional word was later added to the verdict form, this change was made for Plaintiffs' benefit, and Plaintiffs both proposed this final version and registered no objection to the final change.

one figure when making an award against her but then valuing it many times higher when rendering an award against the District is not supported by the evidence and excessive as to the District.

We cannot say this is unreasonable. Plaintiffs did not present evidence or argue any harm distinct from Gottlieb's abuse that arose from the District's negligence. To the contrary, they acknowledge the abuse of the children was inflicted by Gottlieb while the District's negligence permitted her to do so, and they concede, "Based on the evidence, the jury could not have found that each Defendant caused separate harms." Without evidence of some separate harm caused by the District to justify assessing enormously different amounts of damages to each defendant for the harm that was caused by Gottlieb's abuse, we cannot say the trial court was unreasonable or lacked even a fairly debatable justification for finding the vastly disparate awards for the same harm were unsupported by the evidence. Similarly, because the party whose negligence allowed the intentional torts to occur was found to have caused massively more damages than the actor who inflicted those same intentional torts despite there being only a single harm that was inflicted by the abuser, we cannot say the trial court was unreasonable or unjustified in finding the damages award excessive as to the District.

Plaintiffs argue the verdicts reflect the jury's apportionment of a total amount of damages among the defendants and their application of comparative fault principles. They contend we should interpret the verdicts as the jury finding a total sum of $28 million of damages for C.R. and $17 million for C.N., then apportioning the damages according to its perception of relative fault. It appears the verdicts could be interpreted in

that top-down way, but we cannot say the trial court was required to do so rather than using the bottom-up approach it chose.[4]  Neither the jury instructions nor the verdict form instructed the jury to apportion damages: rather, the jury was instructed to consider the liability of each defendant separately, which tends to support the trial court's bottom-up interpretation of the jury's verdicts.

But even if the jury intended to assign comparative fault, the trial court could reasonably, or at least fairly debatably, find the damages excessive as to the District because the attribution of damages to the District for negligently allowing the abuse was so enormously inflated beyond the damages the jury found the direct abuser caused when she deliberately inflicted that abuse. "[E]ven when negligence by an administrator or supervisor is established, the greater share of fault will ordinarily lie with the individual who intentionally abused or harassed the student than with any other party." (*C.A. v. William S. Hart Union High*

_____

[4]     Plaintiffs' argument that the verdicts should be interpreted from the top down as an apportionment of damages is part of their argument that the verdicts were not inconsistent.  While the trial court did use the word "inconsistent" twice in its order, it did not clearly explain its use of the term.  Plaintiffs argue the court meant the verdicts were inconsistent with each other, and therefore we review the special verdict de novo to determine whether the findings can be interpreted in any way that is consistent and reconciles them.  (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 358.)  Defendants argue the court meant not that the verdicts were internally inconsistent but that they were inconsistent with the law.  We need not attempt to divine the court's intended meaning because we affirm the new trial order on the court's other grounds, excessive damages and insufficient evidence.

*School Dist.* (2012) 53 Cal.4th 861, 878–879.) As an example, the court drew attention to the awards for future economic loss, which represented the cost of the future treatment the children would require because of the abuse, and it found no evidence to support charging the economic cost for this treatment to Gottlieb in the amount of $2 million but to the District in the amount of $25 million. Plaintiffs have not identified any evidence supporting this massive disparity; they simply disagree with the court's bottom-up analysis of the jury's deliberative process and urge their allocation analysis. " 'So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside.' " (*Christie, supra*, 135 Cal.App.4th at p. 781.)[5]

---

[5] Plaintiffs argue the awards here were not inconsistent because this case is like *Delos v. Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 660–661, in which damage awards in different amounts were upheld against a claim they were inconsistent, but that case is distinguishable. In *Delos*, the two defendants were inextricably intertwined, as one was formed for the purpose of managing the other and established the manner for evaluating claims that was used by the other in denying an insurance claim, and the decisions of one defendant could not be isolated from the philosophies of the other in designing the insurance program. (See *id.* at pp. 647–653 & fn. 3, 666.) It also was not a case like that here where one defendant negligently allowed the other defendant's tortious conduct to occur; rather, both *Delos* defendants engaged in bad faith conduct with respect to an automobile insurance policy and claim. (See *ibid.*) The *Delos* court's approval of different damage awards as apportioned damages in another context does not demonstrate any error here.

24

Most of Plaintiffs' remaining arguments rest on their top-down view of the verdicts as representing a jury decision that the children suffered a combined $28 million and $17 million in damages that the jury then allocated, a perspective the trial court did not adopt. They assert the disparity in awards would at most justify a new trial only on apportionment and that any allocation errors are harmless because the District is responsible for all damages, but this argument does not demonstrate error in the court's excessive damages and insufficient evidence analyses. Plaintiffs argue the new trial order, to the extent it is based on the grounds of excessive damages or insufficiency of the evidence, must be reversed because the trial court "did not explain why the awards of $28 million and $17 million in damages were too high as compared to the evidence of the amount of harm the twins suffered." They fault the trial court for not having weighed and referred to "evidence pointing to a conclusion that the damages were too high in relation to the evidence of harms," and they assert the disparity in damages awards between the two defendants for the single harm that was inflicted by Gottlieb "does not support the proposition that the total damages the jury found each Plaintiff had suffered was too high when compared to—or justified by insufficient—evidence of the amount of harm the twins actually suffered." The court viewed the verdicts differently, however, and Plaintiffs have not demonstrated any error in the court's failure to justify analyses in which it did not engage.

Plaintiffs also argue the new trial order should be reversed because Defendants invited any inconsistency in the verdicts by advocating for separate damages awards in the trial court. According to Plaintiffs, Defendants waived any challenge to the

verdicts by inviting error and failing to object or request clarification of the verdicts, and therefore this court should reverse the order granting a new trial. The cases on which Plaintiffs rely, however, all involve instances in which the *appellant* was argued to have waived or forfeited their right to appeal by their own conduct. (See *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1687; *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 529–530; *Jentick v. Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121; *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 263–264.) Here, however, Plaintiffs, not Defendants, appeal from the trial court's partial new trial order. Plaintiffs offer no argument as to how these waiver principles require reversal when the party that allegedly waived issues is not appealing the order in question. The trial " 'court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.' " (*In re M.V.* (2025) 109 Cal.App.5th 486, 518.) "[W]e may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287.)

## DISPOSITION

The orders are affirmed.  Each party shall bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


VIRAMONTES, J.